UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

FRED WEINSTEIN,

        Plaintiff,

  -v-                                                                 No.  16-cv-6034-LTS-RLE

CITY OF NEW YORK, NEW YORK CITY
DEPARTMENT OF SANITATION, and
NEW YORK CITY DEPARTMENT OF
CITYWIDE ADMINISTRATIVE
SERVICES,

        Defendants.

-------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

        Plaintiff Fred Weinstein ("Plaintiff") brings this civil rights action, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et s eq. ("Title VII") and New York City Administrative Code § 8-101 (the "NYCHRL"), against the City of New York ("City"), the New York City Department of Sanitation ("DSNY"), and the New York City Department of Citywide Administrative Services ("DCAS") (collectively, "Defendants").  In a two-count Amended Complaint, Plaintiff, a former DSNY employee, alleges that he suffered unlawful discrimination on the basis of his race, religion, and disability.  (Docket Entry No. 26.) Defendants now move, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), 12(d), and 56 to dismiss the complaint, arguing that the claims asserted in Plaintiff's Amended Complaint are barred by the doctrines of claim and issue preclusion and that the pleading fails to state a claim upon which relief may be granted.  (Docket Entry No. 20.)  The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331.

The Court has considered the parties' submissions carefully. For the following reasons, Defendants' motion is denied.[1]

BACKGROUND

The following recitation of facts is drawn from the Amended Complaint (Docket Entry No. 26, Amended Complaint ("Am. Compl.")), the well-pleaded factual content of which is taken as true for purposes of this motion, and the record of Plaintiff's city administrative proceedings.

Plaintiff is a white, Jewish, man who was employed by DSNY as a sanitation worker from on or about September 15, 2014, until an unspecified date. (Am. Compl. ¶¶ 13, 31). Plaintiff alleges that he was a "good employee and performed all of his duties well," and "had a perfect attendance record." (Id. ¶ 14) (internal modifications omitted). Approximately nine months after Plaintiff began working at DSNY, Plaintiff received a letter from DCAS stating that an investigation had been opened regarding Plaintiff's employment application to the City. (Id. ¶ 15.) Specifically, DCAS was investigating improprieties within Plaintiff's employment application regarding allegedly concealed criminal convictions. (Id. ¶ 21.) Plaintiff "had previously been convicted of five misdemeanors, all of which were for non-violent offenses, and the last of which occurred in 2012. Plaintiff was convicted of one felony, for possession of drugs, in 1995." (Id. ¶ 16) (internal modifications omitted). Plaintiff alleges that in June 2015, in the course of the DCAS investigation, an investigator asked him if he was Jewish, and he

---

[1] Defendants' motion is denied insofar as it is brought pursuant to Federal Rule of Civil Procedure 12(b)(1), as Defendants do not provide any support or independent legal arguments demonstrating lack of subject matter jurisdiction. In this Memorandum Opinion and Order, the Court treats the motion as one pursuant to Rule 12(b)(6) and declines to convert it, pursuant to Rule 12(d), to one under Rule 56.

responded that he was.  (Id. ¶ 17.)  The DCAS investigator then allegedly stated, "'That's what I needed to know' and then hung up."  Id.  "Plaintiff received a letter from a DCAS investigator which contained a "'proposed action plan for termination'" in or about late July 2015.  (Id. ¶ 18.)  Plaintiff further alleges that he told a DCAS investigator supervisor in or about August 2015 that any errors on his application were likely the result of his disability of poor eyesight, and that the same supervisor mocked and laughed at him on the basis of his disability when he later completed a statement in connection with the investigation of his application.  (Id. at ¶¶ 26-28, 34.)  At the end of the encounter, according to Plaintiff, the supervisor told him to "expect the worst" and "get the hell out."  (Id. ¶ 29.)  Plaintiff alleges that he was "terminated, in whole or in part, due to his disability."  (Id. ¶ 34.)  The termination took place a few weeks after the meeting with the DCAS investigator supervisor.  (Id. ¶ 31.)

    Plaintiff alleges that an African-American, non-Jewish, sanitation worker (the "Comparator") told him he was also being investigated by DCAS "for allegedly failing to report prior criminal convictions" on his employment application and had received a proposed action plan for termination letter.  (Id. ¶¶ 20, 23.)  According to Plaintiff, the Comparator told him that DCAS had "sudden[ly] and unexpected[ly]" changed their "'nasty' and 'hostile'" demeanor towards the Comparator in April 2015, and shortly thereafter ceased their investigation into him, after the Equal Employment Opportunity Commission ("EEOC") issued a $245 million probable cause determination against DCAS for employment discrimination against blacks and Hispanics, in violation of Title VII.  (Id. ¶¶ 22, 24-25.)  Plaintiff alleges that "DCAS attempted to 'remedy' or at least appear to remedy their discriminatory conduct by treating blacks and Hispanics more favorably after the EEOC determination."  (Id. ¶ 25.)

Plaintiff alleges that the divergent outcomes of Plaintiff's and the Comparator's investigations "for the same conduct: improprieties on their employment application regarding prior convictions," demonstrate disparate treatment on the basis of race and religion among the sanitation workers. (Id. ¶¶ 21, 25, 39, 44.)

Plaintiff appealed his termination to the New York City Civil Service Commission ("CSC"). (See Declaration of Cassandra N. Branch in Support of Defendants' Motion to Dismiss ("Branch Decl."), Ex. I, Docket Entry No. 21-15.) The CSC affirmed DCAS's determination finding Plaintiff disqualified for the position of Sanitation Worker. (Id., Ex. N, Docket Entry No. 21-24.)

DISCUSSION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A proper complaint cannot simply recite legal conclusions or bare elements of a cause of action; there must be factual content plead that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

"In adjudicating a motion to dismiss, a court may consider only the complaint, any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies." Geron v. Seyfarth Shaw LLP (In re Thelen LLP), 736 F.3d 213, 219 (2d Cir. 2013) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002)). The Court may also

consider matters that are subject to judicial notice. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

Claim and Issue Preclusion

Defendants argue that Plaintiff's Amended Complaint should be dismissed as barred by the doctrines of claim and issue preclusion as a result of the CSC's decision on Plaintiff's appeal.[2] Unreviewed state agency "determinations are frequently granted preclusive effect under federal common law." U.S. v. E. River Housing Corp., 90 F. Supp. 3d 118, 139 (S.D.N.Y. 2015). "[W]hen a state agency acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, . . . federal courts must give the agency's fact finding the same preclusive effect to which it would be entitled in the State's courts." Id. at 139-40 (quoting U. of Tenn. v. Elliot, 478 U.S. 788, 799 (1986)) (internal quotation marks omitted).

"Under New York law, an issue decided at a prior proceeding will have preclusive effect upon an issue at a subsequent proceeding only if the issues are identical." Walker v. Triborough Bridge and Tunnel Authority, No. 89-CV-0371, 1990 WL 52139, at *6 (S.D.N.Y. Apr. 17, 1990). Here, the CSC found that Plaintiff was disqualified from CSAC employment. (Branch Decl., Exs. I, N, Docket Entry Nos. 21-15, 21-24.) Although Defendants proffer that Plaintiff argued his claim of discrimination before the CSC, there is no indication in the agency's decisions that the discrimination issue was decided, or was material to the disqualification determination. Accordingly, the agency determination of which the Court can take judicial

---

[2] The Court may properly take judicial notice of public documents, such as the CSC's decision at issue here, filed in an official proceeding in considering a motion to dismiss. See Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47–48 (2d Cir. 1991).

notice does not establish that the claims Plaintiff raises in this action were litigated and decided in the CSC proceedings, and Defendant's issue preclusion argument fails.

Nor does the CSC determination have a claim preclusive effect on this action. An unreviewed administrative proceeding does not have preclusive effect on Title VII claims. See Elliot, 478 U.S. at 796. Congress intended that plaintiffs have a right to a trial de novo when asserting Title VII claims after earlier, unreviewed state administrative proceedings. Id. at 795-96. Thus, Plaintiff's Title VII claim is not barred by claim preclusion, notwithstanding the CSC decision affirming the disqualification determination.

Plaintiff's NYCHRL claim is similarly unaffected by the CSC decision. Under New York law, a claim is not barred by claim preclusion, even if it arises from the same factual grouping as a previously litigated claim, if the initial "forum that rendered the prior judgment did not have the power to award the full relief sought in the subsequent action." Walker, No. 89-CV-0371, 1990 WL 52139, at *6 (S.D.N.Y. Apr. 17, 1990). Here, Plaintiff seeks recompense for lost income and benefits, compensatory damages, attorneys' fees, and reinstatement. (Am. Compl. ¶¶ 40, 46.) The CSC only had the power to "affirm, modify, or reverse" the determination by DCAS that Plaintiff was not qualified for the position of Sanitation Worker. N.Y. City Charter § 813(d). Accordingly, Plaintiff's NYCHRL is not barred by claim preclusion.

For the foregoing reasons, Defendants' motion is denied insofar as it seeks dismissal of the Amended Complaint on the bases of claim and issue preclusion.

Sufficiency of Pleading

Defendants further argue that the Amended Complaint should be dismissed for failure to state a claim because DCAS's disqualification determination was based on legitimate, nondiscriminatory, reasons and was not the product of discriminatory animus. (Def. Opening Br., Docket Entry No. 22, at 2.) This argument, which relies on materials outside the scope of the Amended Complaint and would require the Court to draw inferences in Defendants' favor on disputed factual issues, is misplaced in the context of the instant motion practice. Accordingly, the Court will focus on the pertinent question of whether the Amended Complaint alleges sufficient facts to plead plausibly Plaintiffs' claims of employment discrimination.

Race and Religious Discrimination Claim

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.S. § 2000e-2(a)(1) (LexisNexis 2012). Plaintiff asserts a Title VII claim of discrimination on the basis of race and religion. (Am. Compl. ¶¶ 36-40). To survive a motion to dismiss a claim of discrimination, a plaintiff must plausibly allege facts demonstrating that: (1) he is a member of a protected class; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) he has minimal factual support for the proposition that the employer was motivated by discriminatory intent. Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015).

Here, Plaintiff has sufficiently pled that he is a member of a protected class, as he is a white, Jewish male. See Feingold v. New York, 366 F.3d 138, 152 (2d Cir. 2004). Plaintiff

was qualified for the position of DSNY sanitation worker, "as he had in fact been hired for the position." Id. Further, Plaintiff alleges that six of his supervisors attested that Plaintiff "was an excellent employee." (Am. Compl. ¶ 32.) Plaintiff suffered an adverse employment action when he was terminated from DSNY. See Sanders v. N.Y. City Human Res. Admin., 361 F.3d 749, 755 (2d Cir. 2004). Lastly, Plaintiff has pleaded minimal factual support that he was terminated under circumstances that support an inference of discrimination on the basis of his race and religion through his allegations of an inquiry as to his religion and unlawful disparate treatment as between himself and a Comparator whom Plaintiff alleges was similarly situated.[3] Thus, Plaintiff has sufficiently alleged plausible facts to state a claim of discrimination under Title VII.

Plaintiff also asserts a claim of discrimination under NYCHRL on the basis of race, religion and disability. The NYCHRL makes it "an unlawful discriminatory practice [f]or an employer, because of actual or perceived race, . . . color, . . . [or] disability, . . . [t]o discriminate against [an employee] in compensation or in terms, conditions or privileges of employment." New York City Admin. Code § 8-107(1)(a) (internal modifications omitted). "The law has . . . 'uniquely broad and remedial purposes,' . . . such that courts should construe NYCHRL 'broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible.'" Taylor v. City of New York, 207 F. Supp. 3d 293, 304 (S.D.N.Y. 2016) (quoting Mihalik v. Credit Agricole Cheuvreux North America, Inc., 715 F.3d 102, 109 (2d Cir. 2013)). The Court's determinations above, in connection with Plaintiff's Title VII claims, demonstrate that Plaintiff's allegations are also sufficient to state race and religious

---

[3] Defendants' arguments that the Comparator was not, in fact, similarly situated, rely on material extraneous to the Amended Complaint and are not appropriately considered at this juncture.

discrimination claims under the NYCHRL, whose discrimination prohibitions are construed more broadly than those of Title VII.

Plaintiff's allegations of disability-based discrimination are also sufficient to state a claim under the NYCHRL. Defendants' attacks on this claim are directed to the credibility of Plaintiff's contention that his application omissions were attributable to poor eyesight, and depend on material extraneous to the Amended Complaint. Ignoring such material, as the Court must at this juncture, the Court finds that Plaintiff's allegations that he suffers from disabling poor eyesight, that the investigative supervisor who was responsible for receiving his statement in response to the termination notice ridiculed Plaintiff's disability and his disability-based explanation for his omissions and told Plaintiff to "expect the worst," and that his employment was terminated within weeks of the meeting are sufficient, when construed broadly in Plaintiff's favor, to support an inference that his termination was motivated by disability-based animus. Accordingly, Defendants' motion is denied insofar as it seeks the dismissal of Plaintiff's NYCHRL disability discrimination claim.

CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Amended Complaint is denied.

The initial pre-trial conference in this action will be held on **September 15, 2017**, at **10:45 a.m.** in Courtroom 17C. The parties are directed to confer and to make a joint submission in advance of the conference, in accordance with the Initial Conference Order. (Docket Entry No. 5.)

This Memorandum Opinion and Order resolves Docket Entry No. 20.

SO ORDERED.

Dated: New York, New York
September 5, 2017

  /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge