UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

FRED WEINSTEIN,

       Plaintiff,

  -v-                                                                   No. 16-CV-6034-LTS-DCF

CITY OF NEW YORK, NEW YORK CITY
DEPARTMENT OF SANITATION, and
NEW YORK CITY DEPARTMENT OF
CITYWIDE ADMINISTRATIVE
SERVICES,

       Defendants.

-------------------------------------------------------x

<u>MEMORANDUM ORDER</u>

       Plaintiff Fred Weinstein ("Plaintiff") brings this civil rights action, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e <u>et seq.</u> ("Title VII"), and New York City Administrative Code § 8-101 <u>et seq.</u> (the "NYCHRL"), against the City of New York ("City"), the New York City Department of Sanitation ("DSNY"), and the New York City Department of Citywide Administrative Services ("DCAS") (collectively, "Defendants"). In a two-count Amended Complaint, Plaintiff, a former DSNY employee, alleges that he suffered unlawful discrimination on the basis of his race, religion, and disability. (First Amended Complaint ("FAC"), Docket Entry No. 26.) The Court has jurisdiction of the federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4) and supplemental jurisdiction of the state law claims pursuant to 28 U.S.C. § 1367.

       Defendants now move pursuant to Federal Rule of Civil Procedure 56 for summary judgment as to all claims. The Court has considered thoroughly all of the parties' submissions. For the following reasons, the Court grants Defendants' motion for summary

judgment dismissing the claims against DCAS and DSNY, grants the motion for summary judgment dismissing Plaintiff's Title VII claims against the City, and declines to exercise supplemental jurisdiction of Plaintiff's remaining state law claims.

BACKGROUND

Except as otherwise noted, the following material facts are undisputed.[1]  Fred Weinstein is a white, Jewish male.  (Def. 56.1 ¶ 2.)  On June 1, 2014, Weinstein submitted a "Pre-Employment Application" to work as a Sanitation Worker with the DSNY.  (Def. 56.1 ¶ 20.)  The two-page "Pre-Employment Application" asked 13 questions about employment, criminal, and military history.  (Declaration in Support of Defendants' Motion for Summary Judgment ("Branch Decl."), Docket Entry No. 48, Ex. M.)  On this initial application, Weinstein indicated that he had never been disciplined in any position by an employer and verified that he had "personally completed [the] application, and everything [he had] written within [was], to the best of [his] knowledge and belief, true and complete."  (Def. 56.1 ¶¶ 21-22.)

After completing the "Pre-Employment Application," Plaintiff was required to complete a "Comprehensive Personnel Document" or "CPD-B."  (Def. 56.1 ¶¶ 23-24.)  The CPD-B was more extensive than the initial application and solicited greater detail about Plaintiff's background.  Four of Plaintiff's CPD-B responses are at issue in this case.  First, in response to the question of whether he had "ever been employed by a New York City (NYC)

---

[1] The facts presented or recited as undisputed are drawn from the parties' statements pursuant to S.D.N.Y. Local Civil Rule 56.1, or from evidence as to which there is no non-conclusory factual proffer.  Citations to Defendants' Local Civil Rule 56.1 Statement (Defendants' Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1 ("Def. 56.1"), Docket Entry No. 47) and Plaintiff's Response thereto (Plaintiff's Response to Defendants' Rule 56.1 Statement of Undisputed Facts ("Pls. 56.1"), Docket Entry No. 53), incorporate by reference citations to the underlying evidentiary submissions.

Agency," Plaintiff responded, "No." (Branch Decl., Ex. N at 2.)  Second, in response to the question of whether he had ever been "disciplined (i.e., suspended, demoted, reprimanded, fined, fired, terminated, discharged) in any position by either a public or private employer," Plaintiff responded, "No." (Branch Decl., Ex. N at 2.)  Third, in the "Employment" section, Plaintiff included work history dating back to 1978, but failed to include employment with the New York City Transit Authority ("NYCTA") that he held from 1981 to 1991. (Branch Decl., Ex. N at 3-5; Affirmation of Dorina Cela ("Cela Aff."), Docket Entry No. 55, Ex. 3 at 49.)  Fourth, in response to the question of whether he had "ever been convicted of any felonies, misdemeanors, and violations anywhere, excluding traffic violations," Plaintiff responded, "No." (Branch Decl., Ex. N at 13.)

In July 2014, before completing the CPD-B, Plaintiff underwent several eye examinations.  On July 10, 2014, Plaintiff took and failed the DSNY's eye examination. (Cela Aff., Ex. 3 at 98.)  Plaintiff took another eye examination at Cohen's Fashion Optical on July 12, 2014. (Cela Aff., Ex. 3 at 99.)  According to a letter from Dr. Dana Mavrovich of Cohen's Fashion Optical, "Mr. Fred Weinstein had a comprehensive eye examination at our office on July 12, 2014.  He has a prescription for both distance and reading but only purchased and was dispensed the distance prescription glasses on that day." (Cela Aff., Ex. 34.)  On July 17, 2014, Plaintiff re-took the DSNY eye examination and, wearing his prescription glasses, passed the examination. (Pls. 56.1 ¶ 14.)

Plaintiff submitted his CPD-B on August 28, 2014. (Def. 56.1 ¶¶ 25, 33-35.)  In signing the CPD-B, Plaintiff acknowledged that his "[f]ailure to meet the standards for background investigation" or "false statement or intentional omission of any material facts" could result in his disqualification, even after appointment. (Branch Decl., Ex. N at 16.)

Plaintiff also affirmed that he had "personally completed [the] application, and everything [he] had] written within [was], to the best of [his] knowledge and belief, true and complete." (Id.) On September 15, 2014, DCAS appointed Plaintiff as a "probationary Sanitation Worker," pending satisfactory completion of his background investigation. (Def. 56.1 ¶ 39.)

On June 15, 2015, Mawhy Kaba, a background investigator with the DCAS, sent Plaintiff a "Request for Required Documents" related to his employment application. (Branch Decl., Ex. R.) The Request stated that Mr. Weinstein had failed to disclose (i) a 1991 dismissal from the NYCTA "due to charges,"[2] and (ii) six New York state convictions, which had been incurred between 1995 and 2012. (Branch Decl., Ex. R at 2.) The Request called for Plaintiff to "explain the reason(s) for failure to disclose [his] dismissal on charges; and for failure to disclose [his] conviction record." (Branch Decl., Ex. R at 2.) On June 23, 2015, Plaintiff responded to the Request and explained that he did not disclose his employment with the NYCTA because "[i]t was 25 years ago and [he] had totally forgotten about it," and that he did not disclose his convictions because he "thought the question was asking if [he] had any open criminal cases or open court cases that would affect [him] from becoming a sanitation worker." (Branch Decl., Ex. T at 3, 5.) Nowhere in Plaintiff's nine-page response did he mention any difficulty seeing the application questions.

Investigator Kaba followed up on Plaintiff's June 23 response with a "Notice of Proposed Personnel Action," dated July 22, 2015, which stated that Plaintiff would be found "not qualified" for the Sanitation Worker position because he had withheld "pertinent facts in [his] background during [his] appointment processing, [which] prevented the NYC Department of

---

[2] Plaintiff was terminated from his employment with the NYCTA and charged with stealing Transit Authority property, insubordination, and being absent without proper authority. (Def. 56.1 ¶¶ 42-45.)

Sanitation form [sic] making a hiring decision based upon a complete and thorough review of [his] character and background." (Branch Decl., Ex. U at 4.) Instead of submitting a written response to the Notice, Plaintiff requested (and was granted) an interview at DCAS's offices on August 25, 2015. (Def. 56.1 ¶¶ 52-53; Branch Decl., Ex. V and W.) Investigator Kaba and Steve Weitz, a supervising investigator at DCAS, both attended the meeting with Plaintiff. (Def. 56.1 ¶ 54; Cela Aff., Ex. 8 at 11.) During the meeting, Plaintiff disclosed for the first time that, in addition to the six New York convictions, he had also omitted two Pennsylvania convictions from his employment application. (Def. 56.1 ¶ 58.)

Plaintiff prepared and submitted two hand-written statements at the meeting, which provided additional explanations for his omissions. (Branch Decl., Ex. X.) In the first hand-written statement, Plaintiff stated that he "filled the employment section of [his] application based on the last ten years of employment" because he erroneously thought the application had a "rectangular box before the questions asking to list 'any jobs that [he] worked for the last 10 years.'" (Branch Decl., Ex. X at 1.) The second hand-written statement explained that he had omitted his criminal convictions because he "filled out the application too fast and made a mistake reading" the application. (Branch Decl., Ex. X at 5.)

At the end of the August 25 meeting, Investigator Weitz told Plaintiff to "expect the worst" regarding the outcome of his background investigation. (Pls. 56.1 ¶ 68.) According to Weitz, he wanted Plaintiff "to be prepared for the worst" possible result, in light of the "serious" omissions from his employment application. (Cela Aff., Ex. 8 at 111.)

On August 27, 2015, Investigator Kaba sent Plaintiff an "Amended Notice of Proposed Personnel Action," which added Plaintiff's Pennsylvania convictions. (Def. 56.1 ¶¶ 59-60; Branch Decl., Ex. Y.) Plaintiff responded to the Amended Notice with letters dated

September 1, September 11, September 12, and September 15, 2015. (Def. 56.1 ¶ 62.) In his letter dated September 1, 2015, Plaintiff explained that he was "dealing with a vision impairment problem" when he "originally filled out the application in question," which "caused [him] to unintentionally make mistakes and not comprehend what [he] was looking at while filling [his] application out." (Def. 56.1 ¶¶ 63-65.) Plaintiff admitted in this letter that he "never mentioned his vision impairment to his DCAS investigator during the course of his investigation." (Def. 56.1 ¶ 71.) Each subsequent letter reiterated that his poor eyesight and lack of corrective lenses caused the errors in his application. (Def. 56.1 ¶¶ 74, 77, 78.)

Plaintiff contends that, in a telephone call during his background investigation, Investigator Kaba asked Plaintiff if he was "Jewish" and that, when Plaintiff responded in the affirmative, she replied that "that's what [she] wanted to know." (Cela Aff., Ex. 3 at 28-29; Pls. 56.1 ¶¶ 36-37.) Investigator Kaba denies that this conversation occurred. (Cela Aff., Ex. 7 at 17.) In late-August 2015, Investigator Kaba was promoted to a position with the City's civil service transactions unit, and Investigator Nellie Kearney was assigned to complete Plaintiff's background investigation. (Cela Aff., Ex. 7 at 6, 22; Def. 56.1 ¶ 72.)

On September 11, 2015, Investigator Kearney submitted a "Final Investigation Report," in which she recommended finding Plaintiff "not qualified" for his position because he "misrepresented his entire background. His falsification of all pertinent issues is significant and cannot be overlooked." (Def. 56.1 ¶¶ 79-80.) On September 15, 2015, the Deputy Commissioner of DCAS issued a "Notice of Personnel Action," finding Plaintiff "not qualified" for his position as a Sanitation Worker, and ordering his termination. (Def. 56.1 ¶¶ 81-83.) The Notice indicated the reasons for Plaintiff's termination were related to his character, fraud, falsification of official New York City employment documents, and omitting pertinent facts from

his background information. (Def. 56.1 ¶ 82.) On September 15, 2015, DSNY terminated Plaintiff's employment. (Def. 56.1 ¶ 84.)

Plaintiff appealed his termination to the New York City Civil Service Commission, which twice affirmed DCAS's finding. (Def. 56.1 ¶¶ 86-89.) On October 16, 2015, Plaintiff filed a charge with the New York State Division of Human Rights and the Equal Employment Opportunity Commission ("EEOC"), alleging that the City and DCAS discriminated against him because of his arrest record, conviction record, disability, and race. (Branch Decl., Ex. D; Cela Aff., Ex. 41.) Plaintiff also included charges of retaliation. (Id.) On May 17, 2016, Plaintiff received a Notice of Right to Sue letter (Cela Aff., Ex. 12), and on July 28, 2016, he filed a Complaint with this Court (Docket Entry No. 1).

Alleged Comparator: Brian Garland

Weinstein asserts that the circumstances of his treatment by Defendants are indicative of discrimination because he is similarly situated to a fellow sanitation worker, Brian Garland ("Garland"), who also failed to disclose a prior criminal record but was not dismissed. (FAC ¶¶ 19-21.) Mr. Garland, an African-American, applied for a Sanitation Worker position with DSNY in June 2014 and, like Plaintiff, completed the Pre-Employment Application and the CPD-B. (Def. 56.1 ¶¶ 96-98.) On his CPD-B, Mr. Garland stated that he had never "been convicted of any felonies, misdemeanors, and violations anywhere." (Def. 56.1 ¶ 99.) On July 21, 2014, Mr. Garland was appointed as a probationary Sanitation Worker, pending successful completion of his background investigation. (Def. 56.1 ¶ 100; Cela Aff., Ex. 51.)

In July 2014, prompted by a DSNY training, Mr. Garland contacted Mr. Raspberry, a member of the DCAS's Employee Assistance Unit, stating that he was concerned that he had mistakenly failed to disclose a prior conviction. (Def. 56.1 ¶¶ 116-18; Pls. 56.1 ¶ 89;

Cela Aff., Ex. 9 at 10, 18-19.)  According to Mr. Garland, Mr. Raspberry did not indicate, "anything [was] wrong" and said, "it shouldn't be a problem."  (Cela Aff., Ex. 9 at 10; Branch Decl., Ex. SS.)

On March 18, 2015, DCAS Investigator Nilda Rivera sent Mr. Garland a "Request for Required Documents" regarding a drug conviction that Mr. Garland had omitted from his CPD-B.  (Def. 56.1 ¶¶ 101-03; Branch Decl., Ex. MM.)  Mr. Garland responded with a hand-written letter dated March 26, 2015, explaining that "he believed the charges against him had been dismissed . . . and that he did not disclose his conviction because he was incorrectly advised that incidents over ten (10) years old need not be reported."  (Def. 56.1 ¶ 105.)

On May 5, 2015, Investigator Rivera followed up with a second "Request for Required Documents," requesting proof that the charges against Mr. Garland had been dismissed.  (Def. 56.1 ¶ 107; Branch Decl., Ex. PP.)  On May 29, 2015, before Mr. Garland had responded to the second Request, Investigator Rivera issued a "Notice of Proposed Personnel Action," indicating that Mr. Garland would be found "not qualified" for his position as a Sanitation Worker because his explanation was not supported by the criminal court record.  (Def. 56.1 ¶ 108; Branch Decl., Ex. QQ.)

On June 4, 2015, Mr. Garland met with Investigator Rivera, Steve Weitz, and Carolyn Smith, the Deputy Director of DCAS's Investigations Unit, to discuss his background investigation.  (Def. 56.1 ¶ 111.)  During the meeting, Mr. Garland clarified that most, but not all the charges against him had been dismissed; Mr. Garland indicated that he "should have been explicit in stating the charges that had been dismissed."  (Def. 56.1 ¶ 112; Branch Decl., Ex. RR.)  Mr. Garland further explained that (i) when he renewed his hazardous materials license, the Transportation Security Administration and the United States Department of Homeland

Security had advised him that he was not required to disclose convictions over ten years old, and that (ii) because Mr. Raspberry did not indicate his omission was a problem requiring correction, he believed he could wait until he "[heard] from the investigation unit" before disclosing his conviction. (Def. 56.1 ¶ 113; Branch Decl., Exs. RR, SS.) Mr. Garland also provided a second hand-written statement during the June 4 meeting, explaining that he had been under the impression that all but one of his charges were dismissed following a "boot camp" alternative to incarceration. (Def. 56.1 ¶ 115; Branch Decl., Ex. SS.) Mr. Garland recognized that it was a "big mistake to not disclose" his prior conviction. (Def. 56.1 ¶ 116; Branch Decl., Ex. SS.)

On June 8, 2015, after discussing Mr. Garland's case with Steve Weitz, Executive Director Kevin Williams, and Carolyn Smith, Investigator Rivera issued a "Final Investigation Report" recommending that Mr. Garland be found "qualified" for his position as a Sanitation Worker. (Def. 56.1 ¶ 120; Branch Decl., Ex. UU.) Investigator Rivera's recommendation was based on a determination that Mr. Garland met the job requirements, his conviction record was noted, Mr. Garland met the Veterans Preference requirements, and his background was noted. (Branch Decl., Ex. UU.) Steve Weitz, Investigator Rivera, and Deputy Director Smith all found Mr. Garland's explanations "acceptable" and "consistent" with the information they obtained from the United States Department of Probation. (Cela Aff., Ex. 8 at 123.) On June 9, 2015, DCAS issued a "Notice of Personnel Action," deciding that Mr. Garland was "qualified" for his position based on the same considerations underlying Investigator Rivera's recommendation. (Def. 56.1 ¶ 121; Branch Decl., Ex. VV.)

EEOC Determination

Plaintiff claims that a prior EEOC determination concerning discrimination by DCAS is relevant to his own claim of discrimination. The pertinent undisputed facts are as

follows. On April 1, 2015, the EEOC issued a determination concerning a charge brought by "a class of African American and Hispanic women . . . employed as Administrative Managers" against DCAS for engaging in "a discriminatory pattern of wage suppression and subjective promotion." (Def. 56.1 ¶¶ 128-29; Branch Decl., Ex. WW.) The EEOC's investigation revealed reasonable cause to believe that DCAS had engaged in a discriminatory pattern of wage suppression and subjective promotion in violation of the Equal Pay Act of 1963 and Title VII. (Branch Decl., Ex. WW at 2.) The EEOC's resulting proposed conciliation agreement applied only to class members and the DCAS. (Def. 56.1 ¶ 130; Branch Decl., Ex. XX.) Neither Plaintiff nor Mr. Garland identifies as an African American or Hispanic woman, nor has either held a position as an Administrative Manager. (Def. 56.1 ¶¶ 93, 131; Pls. 56.1 ¶ 1.)

## DISCUSSION

Rule 56 Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is to be granted in favor of a moving party where that party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Thus, a party that is unable to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will not survive a Rule 56 motion. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Specifically, the party who bears the burden of proof at trial "must do more than simply show that there is some metaphysical doubt as to the material facts and they may not rely on conclusory allegations or unsubstantiated speculation." Jeffreys v. N.Y.C., 426 F.3d 549, 554 (2d Cir. 2005) (citations omitted). The moving party bears the burden of demonstrating the absence of a material fact,

and the court must be able to find that, "'after drawing all reasonable inferences in favor of a non-movant, no reasonable trier of fact could find in favor of that party.'" Marvel Entm't, Inc. v. Kellytoy (USA), Inc., 769 F. Supp. 2d 520, 523 (S.D.N.Y. 2011) (quoting Heublein v. U.S., 996 F.2d 1455, 1461 (2d Cir. 1993)).

For the purposes of summary judgment motion practice, a fact is considered material "if it might affect the outcome of the suit under the governing law," and an issue of fact is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Holtz v. Rockefeller & Co. Inc., 258 F.3d 62, 69 (2d Cir. 2001) (internal quotation marks omitted). "[M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks omitted). "[E]ven in the discrimination context, a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment." Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997).

Claims Against DSNY and DCAS

Because DSNY and DCAS are City agencies, Plaintiff's claims against them must be dismissed. The New York City Charter provides that "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law." N.Y. City Charter ch. 17 § 396. As such, City agencies are not "suable entit[ies]." Paige-El v. Herbert, 735 F. App'x 753, 755 (2d Cir. 2018); see also Jenkins v. N.Y.C., 478 F.3d 76, 93 n.19 (2d Cir. 2007) (finding that "[t]he district court correctly noted that the NYPD is a non-suable agency of the City"). Therefore, the Court grants Defendants' motion for summary judgment dismissing

Plaintiff's claims as against DSNY and DCAS, without prejudice to litigation against the City of the claims asserted.

Title VII Claims Against NYC

Under Title VII, it is unlawful for an employer "to discriminate against any individual with respect to his . . . employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.S. § 2000e-2(a)(1) (LexisNexis 2012). Plaintiff's Title VII discrimination claims are evaluated under the three-step burden shifting analysis established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). See, e.g., Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000). The first step under the McDonnell Douglas structure requires plaintiffs to proffer evidence establishing a prima facie case of discrimination. 411 U.S. at 802; see, e.g., St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993). "To meet the burden of production required for a prima facie case of discrimination, a plaintiff must show that he (1) is a member of a protected class; (2) was performing his duties satisfactorily; (3) was discharged; and that (4) his discharge occurred under circumstances giving rise to an inference of discrimination on the basis of his membership in the protected class." Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

The second step shifts the burden to the employer to offer some legitimate, non-discriminatory reason for its actions. McDonnell Douglas, 411 U.S. at 802. "This burden is one of production, not persuasion; it can involve no credibility assessment." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000) (internal quotation marks omitted). The employer does not need to prove that the challenged action was not the product of discrimination, but must provide a clear and specific explanation for the action. Gibbs v. Consol. Edison Co. of N.Y., 714 F. Supp. 85, 89 (S.D.N.Y. 1989). The presumption of discrimination

arising from the prima facie case drops out upon such a proffer of a legitimate, non-discriminatory reason.

The burden then shifts back to Plaintiff to offer proof that would enable a reasonable fact finder to conclude that Defendant's proffered reason was a pretext for prohibited discrimination. Reeves, 530 U.S. at 143; accord Schnabel v. Abramson, 232 F.3d 83, 88 (2d Cir. 2000). Plaintiffs may rely at the rebuttal stage on the same facts used to establish the prima facie case so long as a preponderance of the evidence would allow a reasonable fact finder to find that a discriminatory violation has occurred. Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 78 (2d Cir. 2001). However, Plaintiff's own conclusory allegations will not be sufficient to overcome proffered evidence substantiating a defendant's non-discriminatory rationale for the actions. See Jasmin v. Dep't of Labor, 2007 WL 1746909, at *8 (S.D.N.Y. June 15, 2007).

*Race Discrimination*

Defendants do not dispute that Plaintiff has satisfied the first three elements of his prima facie case of discrimination. Defendants contest the fourth element; they argue that Plaintiff has failed to produce evidence from which a reasonable juror could infer discrimination.

Plaintiff asserts that he was "treated differently and ultimately terminated from his employment . . . based on his race (White)." (Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Pls. Opp. Br."), Docket Entry No. 54, at 3.) Plaintiff argues that the Court can infer discrimination from Defendants' more favorable treatment of Brian Garland, Plaintiff's "similarly situated" co-worker. (Pls. Opp. Br. at 6.) Defendants assert that Plaintiff and Mr. Garland are not "similarly situated" and that Plaintiff has otherwise failed to produce any evidence from which a reasonable juror could infer that his

termination was motivated by discriminatory animus.  (Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment ("Def. Br."), Docket Entry No. 49, at 6-12.)

"A plaintiff may raise . . . an inference [of discrimination] by showing that the employer subjected him to disparate treatment, that is, treated him less favorably than a similarly situated employee outside his protected group." Graham, 230 F.3d at 39.  "When considering whether a plaintiff has raised an inference of discrimination by showing that she was subjected to disparate treatment, we have said that the plaintiff must show she was 'similarly situated in all material respects' to the individuals with whom she seeks to compare herself." Id. (quoting Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 64 (2d Cir. 1997)).  What constitutes "all material respects" is a case-by-case determination that courts should make by considering (i) whether the plaintiff and the alleged comparators were subject to the same workplace standards, and (ii) whether the conduct for which the employer imposed discipline was of comparable seriousness.  Id. at 40.  The plaintiff and comparator need not be identical, but the facts and circumstances of their respective cases should bear a "reasonably close resemblance." Id.

Here, Plaintiff has failed to proffer evidence from which a reasonable juror could infer race discrimination.  Plaintiff's claim hinges on a comparison to his co-worker, Brian Garland.  However, Plaintiff has not proffered evidence sufficient to support a determination that Mr. Garland was "similarly situated" to Plaintiff "in all material respects."  First, the conduct for which the Defendants disciplined Plaintiff was not of comparable seriousness to Mr. Garland's conduct.  "When a plaintiff's misconduct is objectively more serious than that of a proposed comparator, differential treatment by the employer does not create an issue of fact that will defeat a motion for summary judgment." Conway v. Microsoft Corp., 414 F. Supp. 2d 450, 464

(S.D.N.Y. 2006). Mr. Garland omitted only one conviction, while Plaintiff omitted eight. Mr. Garland included all of his employment history in his original disclosures, while Plaintiff omitted ten years of employment with the NYCTA. Mr. Garland had never been terminated by an employer, while Plaintiff had been terminated from his job with the NYCTA for stealing Transit Authority property, insubordination, and being absent without proper authority. Mr. Garland raised his criminal history omission with DCAS before his background investigation commenced, while Plaintiff continued to withhold information about his prior convictions even after he received his first "Request for Required Documents." Mr. Garland's explanations for his omission were consistent throughout his investigation and were corroborated by federal probation officers, while Plaintiff's explanations changed at each stage of the investigation.

Second, Mr. Garland and Plaintiff were assigned different background investigators. See Conway, 414 F. Supp. 2d at 466 (finding plaintiff and comparator differently situated in part because "[a] different decisionmaker was responsible for investigating and determining how to discipline" comparator). Investigator Nilda Rivera found Mr. Garland's explanations reasonable and consistent, while Investigator Nellie Kearney concluded that Plaintiff "misrepresented his entire background" and that he falsified "all pertinent issues" concerning his background investigation. While Plaintiff may wish to criticize Defendants' determination as to Mr. Garland's employment, "'courts must be careful not to second guess an employer's judgment that it makes in good faith.'" Id. at 464 (quoting Gallo v. Prudential Residential Servs., Ltd. P'Ship, 22 F.3d 1219, 1226 (2d Cir. 1994)). Plaintiff has not proffered any evidence that Defendants' determination was made in bad faith.

Third, Mr. Garland was found "qualified" for the Sanitation Worker position based, in part, on a determination that he met Veterans Preference requirements. Plaintiff was not a veteran and, thus, was not given Veterans Preference treatment.

Plaintiff also asserts that the "temporal proximity between the issuance of the [April 2015] EEOC Determination asserting that Defendant [DCAS] had engaged in discriminatory acts against African-American employees and the issuance of [Mr. Garland's] positive Final Investigation Report," further bolsters his allegation that Mr. Garland received preferential treatment based on his race. (Pls. Opp. Br. at 13.) Plaintiff alleges that "DCAS attempted to 'remedy' . . . their discriminatory conduct by treating blacks and Hispanics more favorably after the EEOC determination." (FAC ¶ 25.)

Plaintiff's claim that Mr. Garland's employment application received preferential treatment based on the EEOC's April 2015 Determination is unsubstantiated speculation and cannot preclude a finding of summary judgment. The April 2015 EEOC Determination concerned issues quite distinct from those implicated in this case. The EEOC Determination involved issues affecting (i) African-American and Hispanic women, rather than men; (ii) Administrative Managers, rather than Sanitation Workers; and (iii) DCAS's pay and promotion decisions, rather than hiring decisions. Further, even if the Determination did apply to Mr. Garland, the unrebutted evidence shows that Investigators Kaba and Weitz—the employees who Plaintiff alleges harbored discriminatory intent—did not know about the EEOC Determination until Plaintiff commenced this lawsuit. (See Cela Aff., Ex. 7 at 23 and Ex. 8 at 129-30.) Thus, the EEOC Determination could not have affected DCAS's decision to terminate Plaintiff.

Even assuming Plaintiff could adduce evidence of a prima facie case of race discrimination, Defendants have proffered a legitimate, non-discriminatory reason for their

actions: Plaintiff intentionally falsified his employment applications in violation of the New York Civil Service Code and the Rules of the City of New York. McDonnell Douglas, 411 U.S. at 802. DCAS determined, based on its thorough investigation and the reasoned professional judgment of its investigators, that Plaintiff was ineligible for employment because he had "intentionally made a false statement of [a] material fact in his application," and had "practiced, or attempted to practice . . . deception or fraud in his application" in violation of Section 50 of the New York Civil Service Code. DCAS also determined that Plaintiff was not "of satisfactory character and reputation" as required by Section 11-01(s)(1) of Title 55 of the Rules of the City of New York. Certainly violations of state and city law provide a legitimate, non-discriminatory reason for Defendants' actions.

Plaintiff has failed to proffer evidence that would enable a reasonable fact finder to conclude that Defendants' reason for terminating him was a pretext for prohibited discrimination. Thus, the Court grants the City's motion for summary judgment dismissing Plaintiff's Title VII race discrimination claim.

*Religious Discrimination*

The first three elements of his prima facie case are, again, established. The disputed issue is whether Plaintiff's termination was motivated by religious discrimination. Plaintiff maintains that "[t]he comments by Ms. Kaba to Plaintiff" and "her conviction that Plaintiff had engaged in fraud simply based on her discovery of his omissions, serve as indicia of discriminatory animus." (Pls. Opp. Br. at 17.) According to Defendants, "[t]he only religious discrimination allegation plaintiff makes in the Complaint" pertains to the alleged telephone conversation between Investigator Kaba and Plaintiff, which is not supported by any record evidence. (Def. Br. at 12.)

As with his race discrimination claim, Plaintiff has failed to make a prima facie showing of religious discrimination. Plaintiff relies entirely on a remark DCAS Investigator Kaba allegedly made during a telephone conversation with Plaintiff on an unknown date. According to Plaintiff, Investigator Kaba allegedly asked Plaintiff if he "was a Jew" or "Jewish," Plaintiff answered in the affirmative, and Investigator Kaba replied, "that's what I needed to know." Investigator Kaba denies that this conversation took place.

Even assuming that the conversation did occur, Investigator Kaba's remarks, without more, "do not constitute sufficient evidence to make out a case of employment discrimination." Danzer v. Norden Sys., Inc., 151 F.3d 50, 56 (2d Cir. 1998). The record reveals no "other indicia of discrimination" such that Investigator Kaba's remarks could constitute more than non-actionable "stray remarks." Id. The remarks themselves are not derogatory or discriminatory on their face. Moreover, Investigator Kaba did not make the final decision to terminate Plaintiff, nor did she author the Final Investigation Report that recommended Plaintiff's termination. See Tomassi v. Insignia Fin. Grp., Inc., 478 F.3d 111, 115 (2d Cir. 2007) (noting that "remarks made by someone other than the person who made the decision adversely affecting the plaintiff may have little tendency to show that the decision-maker was motivated by the discriminatory sentiment expressed in the remark"). For these reasons, the Court concludes that no reasonable juror could infer that Plaintiff was discriminated against based on his religion.

Plaintiff has failed to make a prima facie showing of religious discrimination and, as explained above, Defendants have demonstrated a legitimate, non-discriminatory reason for terminating Plaintiff's employment. Plaintiff has not proffered any evidence that Defendants'

reason was pretextual. Therefore, the Court grants the City's motion for summary judgment dismissing Plaintiff's Title VII religious discrimination claim.

NYCHRL Claims

As Plaintiff's federal claims have been dismissed, the Court declines to exercise supplemental jurisdiction of Plaintiff's NYCHRL law claims for race, religion, and disability discrimination. See 28 U.S.C. § 1367(c)(3).

CONCLUSION

The Court grants Defendants' motion for summary judgment dismissing Plaintiff's claims against defendants DCAS and DSNY without prejudice to litigation of those claims against defendant City. The Court grants summary judgment dismissing Plaintiff's Title VII race and religious discrimination claims, and declines to exercise supplemental jurisdiction of the remaining state law claims. The pretrial conference currently scheduled for April 5, 2019, at 11:00 a.m. is cancelled. The Clerk of Court is respectfully requested to enter judgment in Defendants' favor and to close this case.

This Memorandum Order resolves Docket Entry No. 46.

SO ORDERED.

Dated: New York, New York
March 28, 2019

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge